DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GLEN SPIRITIS,**
Appellant,

v.

**JULIE BOTEL, Ed.D., RIVIERA BEACH CITY COUNCIL,
CITY OF RIVIERA BEACH** and **DEBRAH HALL-MCCULLON,**
Appellees.

No. 4D2024-0203

[February 27, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott R. Kerner, Judge; L.T. Case No. 502023CA016265.

Mark Herron and Patrick Scott O'Bryant of Messer, Caparello, P.A., Tallahassee, for appellant.

David K. Markarian of The Markarian Group, Palm Beach Gardens, for appellee Julie Botel, Ed.D.

No appearance for appellees Riviera Beach City Council, City of Riviera Beach, or Debra Hall McCullon.[1]

KUNTZ, J.

Glen Spiritis, a candidate for City Council in Riviera Beach, appeals the circuit court's final judgment directing the Riviera Beach City Clerk to add another candidate, Julie Botel, Ed.D., to the ballot.[2] Relying on the plain language of the controlling statute, we reverse. Further, because of the expedited nature of this appeal, any post-opinion motion must be filed by noon on February 29, 2024. If any such motion is filed, any response must be filed by noon on March 1, 2024.

---

[1] Debrah Hall-McCullon, Riviera Beach's Acting City Clerk, appears as Debra Hall McCull on the circuit court's final judgment.

[2] The notice of appeal was filed on January 19, 2024. We expedited the appeal and the appellant's reply brief was filed on February 13, 2024.

*Background*

The City of Riviera Beach will hold its Municipal General Election on Tuesday, March 19, 2024. To appear on the ballot for City Council, a candidate must file all papers and pay all fees within the twenty-one-day qualifying period. Dr. Julie Botel sought reelection to her seat on the City Council by filing papers and paying the filing fee on November 21, 2023— the final day of that qualifying period.

At 9:50 a.m. on that final day, Dr. Botel picked up the necessary paperwork to qualify as a candidate from the City Clerk. Dr. Botel returned to the City Clerk at 11:08 a.m. to file her campaign treasurer's form, which was required to be stamped by the City Clerk before she could open a campaign account. At 11:16 a.m.,[3] and with the stamped campaign treasurer's form in hand, Dr. Botel went to a bank to open her campaign account. She successfully opened the account with $1,500 in cash.

Facing a noon deadline, Dr. Botel returned to the City Clerk's Office at 11:47 a.m. She filed *nearly* all of what she believed to be required, including a *cashier's check* in the amount of the qualifying fee.

At 11:53 a.m., Dr. Botel discovered the City Clerk did not have her filed Financial Disclosure Form. Dr. Botel then asked her aide to retrieve a copy of the form from her office. The aide could not locate the previously filed form but testified that she emailed a copy of the form to Dr. Botel.[4] At 12:07 p.m., Dr. Botel handed her phone to the City Clerk who forwarded the email to herself and printed it. At 12:09 p.m., the City Clerk stamped the printed Financial Disclosure Form.

Dr. Botel left the City Clerk's Office believing she had qualified as a candidate for City Council. But days later she received a letter from the City Clerk informing her that she was disqualified because she submitted her paperwork after the deadline and used a cashier's check to pay the qualifying fee.

---

[3] Dr. Botel states in her answer brief that this eight-minute process should have taken two minutes. The delay was allegedly caused by the antics of another City Council member who did not want Dr. Botel to timely file her qualifying papers.

[4] The other City Council member also allegedly delayed the attempts to obtain the Financial Disclosure Form.

After her disqualification, Dr. Botel filed a complaint in the circuit court. The circuit court held a bench trial and issued a final judgment declaring that Dr. Botel is a qualified candidate entitled to run for reelection.

*Analysis*

We are asked to address two issues on appeal. First, Dr. Botel's use of a cashier's check to pay the campaign filing fee. Second, the timeliness of the Financial Disclosure form that the City Clerk received via email at 12:07 p.m.

We first address the argument that Dr. Botel's use of a cashier's check precluded her from qualifying to appear on the ballot. We agree with Spiritis that the form of payment of the qualifying fee is governed by section 99.061(7)(a)1., Florida Statutes (2023).

The form of payment of qualifying fees is governed by section 99.061(7)(a)1. because the Riviera Beach Ordinances incorporates that statute. Chapter 5, Article I, Section 5-2, Riviera Beach Ordinances, states that "[c]andidates for mayoral and city council shall file such papers and pay such fees as may be required by law, including the filing fee required by City Charter article II, section 3, during the qualifying period with the city clerk . . . no later than noon" on the final day of the qualifying period. Another portion of the code, Chapter 5, Article I, Section 5-12, incorporates "[a]ll general laws of the state relating to elections and to the registration of persons qualified to vote therein which are not inconsistent or in conflict with the provisions of this chapter or of the City Charter . . . ." So the Riviera Beach Ordinances incorporate any election statute that does not conflict with the city ordinances.

Section 99.061(7)(a)1. provides:

> (7)(a) In order for a candidate to be qualified, the following items must be received by the filing officer by the end of the qualifying period:
>
> 1. **A properly executed check drawn upon the candidate's campaign account** payable to the person or entity as prescribed by the filing officer in an amount not less than the fee required by s. 99.092, unless the candidate obtained the required number of signatures on petitions pursuant to s. 99.095. The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account.

> If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate and the candidate shall have until the end of qualifying to pay the fee with a cashier's check purchased from funds of the campaign account. Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.

§ 99.061(7)(a)1., Fla. Stat. (2023) (emphasis added).

Dr. Botel argues that section 99.061(7)(a)1. "is also inapplicable, because it does not apply to municipal races such as the one at issue." It is true that the statute's title is "Method of qualifying for nomination or election to federal, state, county, or district office." § 99.061. The election at issue is municipal, not "federal, state, county, or district office." But unlike each of the other provisions in section 99.061, section 99.061(7) is not limited to a specific category of elections. Additionally, the Riviera Beach Ordinances specifically incorporate all general laws of the state relating to elections, and section 99.061(7) is a general law of the state relating to elections.

Finally, in *Wright v. City of Miami Gardens*, 200 So. 3d 765 (Fla. 2016), discussed below, the Florida Supreme Court explicitly applied the section to a municipal election. The court held that section 99.061(7) is clear and unambiguous and "because the fee was not paid before the end of qualifying, under the plain language of the statute[,] the filing officer had no choice but to disqualify Wright" as a candidate in the municipal election. *Wright*, 200 So. 3d at 772.[5] For these reasons, we reject Dr. Botel's argument that section 99.061(7) does not apply.

Section 99.061(7)'s history is convoluted. Until 2011, as it does now, section 99.061(7) required a candidate to provide a check drawn on the candidate's campaign account in the amount of the fee. § 99.061(7)(a)1., Fla. Stat. (2010). If the candidate's check was returned for any reason, the filing officer was required to give the candidate forty-eight hours to cure the deficiency with a cashier's check purchased from funds of the campaign account. *Id.*

---

[5] The Florida Supreme Court noted that it was a non-partisan election but stated no party argued the election was governed by section 105.031, Florida Statutes (2016). *Wright*, 200 So. 3d at 773. Regardless, the requirement to pay by a check drawn on the campaign account exists in both sections 99.061 and 105.031. The difference in the two statutes is the opportunity to cure if a check drawn on the campaign account is not honored by the bank.

4

In 2011, the Florida Legislature amended the statute and removed the candidate's ability to cure the deficiency if the candidate's check was returned after the qualifying period. Ch. 2011-40, Laws of Fla. But the Florida Supreme Court struck that portion of the 2011 amendments and held that "the version of section 99.061(7)(a)1. in existence prior to the 2011 amendments is revived by operation of law." *Wright*, 200 So. 3d at 779.

While we presume the Florida Legislature was aware of the Florida Supreme Court's opinion in *Wright*,[6] it amended section 99.061(7) in 2021 and 2023, each time including the stricken language. *See* Ch. 2023-49, Laws of Fla.; and Ch. 2021-11, Laws of Fla.

In *Wright*, the Florida Supreme Court emphasized that a candidate who had done everything right should not be disqualified "due to an error of a third-party bank that was totally beyond the control of the candidate. . . ." 200 So. 3d at 775-76. Such a result, the court held, was "both unreasonable and unnecessary, as well as plainly irrational." *Id.* at 776. Here, however, Dr. Botel did not do everything statutorily required for qualifying. So the constitutional infirmity the Florida Supreme Court relied on in *Wright* does not exist in this case. Instead, we focus on section 99.061(7)'s plain language.

Section 99.061(7) requires candidates to pay the qualifying fee with a "properly executed check drawn upon the candidate's campaign account." § 99.061(7)(a)1. Through this statutory language, the Legislature intended "the law to effect a true bright line." *Wright*, 200 So. 3d at 772. The first sentence imposes a bright line rule and requires payment by a check drawn on the campaign's account. This requirement "serves the legitimate government purpose of ensuring that candidates for office lawfully pay the required qualifying fee with campaign funds." *Id.* at 782 (Polston, J., dissenting); *see also Boatman v. Hardee*, 254 So. 3d 604, 611 (Fla. 1st DCA 2018) (citations omitted). The second sentence relaxes that rule for special district candidates. *See* § 99.061(7)(a)1. ("The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account."). Thus, the legislature intended to apply this bright line rule to certain candidates but not others.

This bright line rule precludes a candidate from attempting to pay the qualifying fee with a cashier's check in the first instance. The First District

---

[6] *See Wright*, 200 So. 3d at 773 (citations omitted) ("This Court presumes that the Legislature is aware of judicial construction of its statutes.").

addressed this same issue in *Boatman*. In *Boatman*, the candidate "paid his qualifying fee using a cashier's check purchased with funds from his campaign account rather than a check drawn upon his campaign account." *Boatman*, 254 So. 3d at 605. The First District concluded that "[section 99.061(7)] is unambiguous and" that "its plain language should be applied." *Id.* at 607.[7] As a result, the candidate who submitted the cashier's check did not qualify to appear on the ballot. *Id.* at 605.

Dr. Botel was required to pay the qualifying fee with a "properly executed check drawn upon the candidate's campaign account." § 99.061(7)(a)1.; *see also* Order Granting Declaratory & Injunctive Relief, *Kelson v. City of Riviera Beach*, Case No. 50-2023-CA-016222 (Fla. 15th Cir. Ct. Dec. 21, 2023) (concluding that, under section 99.061(7), it is not acceptable to pay the qualifying fee for the Riviera Beach City Council with a cashier's check). Because Dr. Botel submitted her qualifying papers with a cashier's check, she did not qualify to run for City Council.

We recognize this result is harsh. But section 99.061(7) is clear, and it is not for us to rewrite a statute to save a party in such a situation. We must enforce the law as written.

Because we agree with Spiritis that Dr. Botel's failure to submit a properly executed check drawn on her campaign account precluded her from qualifying as a candidate, we need not address the second issue raised on appeal.

*Conclusion*

Section 99.061(7) unambiguously requires a candidate's qualifying check to be drawn on the campaign account. Dr. Botel failed to meet that requirement and, as a result, the City Clerk correctly excluded her from the ballot. The circuit court's final judgment is reversed. Because of the expedited nature of this appeal, any post-opinion motion must be filed by noon on February 29, 2024. If such a motion is filed, any response must be filed by noon on March 1, 2024. The filing of a motion will not extend or toll the time to file such a post-opinion motion.

---

[7] *Boatman* involved a school board election and is governed by a different statute. *See Boatman*, 254 So. 3d at 607-08 (citing § 105.031(5)(a)1., Fla. Stat. (2017)). However, the applicable statute in *Boatman*, like the statute in this case, required the qualifying payment to be "a properly executed check drawn upon the candidate's campaign account." *Id.*

*Reversed and remanded.*

MAY and CONNER, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**